IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JOSEPH NEVILLE, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 3:18-cv-00368-WHR |
| Plaintiff, | ) ) | District Judge Walter H. Rice Magistrate Judge Michael J. Newman |
| vs. | ) ) | |
| NELSON TREE SERVICE, LLC, | ) ) | |
| Defendant. | ) ) | |

---

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL
CERTIFICATION AND COURT-AUTHORIZED NOTICE**

---

Timothy S. Anderson (0071593)
Amy Ryder Wentz (0081517)
Alex R. Frondorf (0087071)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114
(216) 696-7600
(216) 696-2038 (Fax)
tanderson@littler.com
awentz@littler.com
afrondorf@littler.com

Attorneys for Defendant,
NELSON TREE SERVICE, LLC

**TABLE OF CONTENTS**

                                                                    PAGE

I.    INTRODUCTION ....................................................................... 1

II.   FACTUAL BACKGROUND ........................................................ 3

      A.    Nelson Tree's Operations Span 21 States and 7 Regions ...................... 3

      B.    The Amount and Timing of Travel by Nelson Tree Employees Varies ............... 4

      C.    Plaintiff's and the Declarants' Employment with Nelson Tree ........................... 8

III.  PROCEDURAL BACKGROUND ................................................. 9

IV.   LAW AND ARGUMENT .......................................................... 9

      A.    Conditional Certification "Is Not Automatic" ...................................... 9

      B.    Plaintiff Lacks Evidence that the Individuals He Seeks to Represent are
            Unified by a Widespread FLSA-Violating Policy ................................. 11

            1.    Nelson Tree's Declarations Show that Members of the Collective
                  Did Not Suffer the Same FLSA Violations that Plaintiff Alleges ........... 11

            2.    Plaintiff's Declarations Fail to Establish the Existence of a
                  Widespread Illegal Company Policy or Procedure .................................. 14

      C.    Plaintiff's Claims Require Individualized Determinations that would
            Render a Collective Action Unmanageable ....................................... 17

            1.    What are the "regular working hours" of each opt-in Plaintiff? .............. 18

            2.    When did each opt-in Plaintiff work "overnight" trips and under
                  what circumstances? ................................................................ 18

            3.    When did each opt-in Plaintiff travel to and from the work location
                  that required an overnight stay? ................................................. 19

            4.    If compensable travel time occurred, how long was spent traveling
                  and was it in a workweek that exceeded 40 hours? ................................. 20

            5.    Does the Motor Carrier Act Exemption apply? ....................................... 21

            6.    Did Nelson Tree know of the alleged uncompensated travel time? ........ 21

            7.    Plaintiff's Proposed Class Definition Necessitates Individualized
                  Inquiries to Ascertain Membership in the Collective ............................. 22

TABLE OF CONTENTS
(CONTINUED)

PAGE

    D.     Plaintiff Lacks Evidence that He is Similarly Situated to the Putative Class ...... 23

          1.     Plaintiff Lacks Evidence Sufficient to Justify Certification of a Companywide Collective Action ............................................................ 24

          2.     The Cases Cited by Plaintiff Do Not Support His Arguments ............... 25

V.     CONCLUSION ........................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adair v. Wis. Bell, Inc.*,
2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008)....................................................10

*Atkinson v. TeleTech Holdings, Inc.*,
2015 U.S. Dist. LEXIS 23630 (S.D. Ohio Feb. 26, 2015)...............................................11, 27

*Bassett v. TVA*,
2013 U.S. Dist. LEXIS 83203 (W.D. Ky. June 13, 2013).....................................................12

*Brandenburg v. Cousin Vinny's Pizza, LLC*,
2017 U.S. Dist. LEXIS 129955 (S.D. Ohio Aug. 14, 2017)..........................................*passim*

*Brittmon v. Upreach, LLC*,
285 F.Supp.3d 1033 (S.D. Ohio 2018) ................................................................................26

*Colson v. Avnet, Inc.*,
687 F.Supp.2d 914 (D. Ariz. 2010) ......................................................................................24

*Combs v. Twins Grp., Inc.*,
2016 U.S. Dist. LEXIS 172797 (S.D. Ohio Dec. 14, 2016) ..................................................16

*Comer v. Wal-Mart Stores, Inc.*,
454 F.3d 544 (6th Cir. 2006) ................................................................................................9

*Conklin v. 1-800 Flowers.com, Inc.*,
2017 U.S. Dist. LEXIS 126733 (S.D. Ohio Aug. 10, 2017)...........................................24, 25

*Dieffenbauch v. Rhinehart R.R. Constr.*,
2018 U.S. Dist. LEXIS 147980 (N.D.N.Y. Aug. 30, 2018) ..................................................24

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018)..........................................................................................................10

*Funk v. Airstream, Inc.*,
2018 U.S. Dist. LEXIS 82666 (S.D. Ohio May 16, 2018) ....................................................26

*Gentrup v. Renovo Servs., LLC*,
2008 U.S. Dist. LEXIS 121479 (S.D. Ohio 2008)................................................................14

*Hoffmann-La Roche v. Sperling*,
493 U.S. 165 (1989)..............................................................................................................11

*Lacy v. Reddy Elec. Co.*,
   2011 U.S. Dist. LEXIS 142050 (S.D. Ohio Dec. 9, 2011)(Rice, J.)................................15, 16

*Lacy v. Reddy Elec. Co.*,
   2013 U.S. Dist. LEXIS 97718 (S.D. Ohio July 11, 2013) .......................................16

*Lutz v. Huntington Bancshares, Inc.*,
   2013 U.S. Dist. LEXIS 56477 (S.D. Ohio Apr. 19, 2013) ....................................10

*Moore v. Performance Pressure Pumping Servs., LLC*,
   2017 U.S. Dist. LEXIS 63384 (W.D. Tex. Apr. 26, 2017).....................................12

*Myers v. Hertz Corporation*,
   2006 U.S. Dist. LEXIS 100597 (E.D.N.Y. May 18, 2006) ....................................18

*Neff v. U.S. Xpress, Inc.*,
   2013 U.S. Dist. LEXIS 36914 (S.D. Mar. 18, Ohio 2013) ...................................10

*O'Brien v. Ed Donnelly Enters., Inc.*,
   575 F.3d 567 (6th Cir. 2009) ...............................................................9, 11

*O'Neal v. Emery Fed. Credit Union*,
   2013 U.S. Dist. LEXIS 110383 (S.D. Ohio 2013).........................................*passim*

*Rudd v. T.L. Cannon Corp.*,
   2011 U.S. Dist. LEXIS 21061 (N.D.N.Y. Jan. 4, 2011) ......................................10

*Seger v. BRG Realty, LLC*,
   2011 U.S. Dist. LEXIS 56117 (S.D. Ohio May 24, 2011) ....................................26

*Troutt v. Stavola Bros.*,
   107 F.3d 1104 (4th Cir. 1997) ..............................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S.Ct. 2541 (2011).....................................................10, 11

*White v. Baptist Mem'l Health Care Corp.*,
   699 F.3d 869 (6th Cir. 2012) ..............................................................9, 22

*Yu Xing Zheng v. Shuguang Shi*,
   2014 U.S. Dist. LEXIS 129076 (D. Md. Sept. 16, 2014) ....................................21

**Statutes**

29 U.S.C. § 13(b)(1) ...........................................................................21

29 U.S.C. § 213(b)(1) ..........................................................................21

29 U.S.C. § 216(b) ............................................................................9, 10

29 U.S.C. §254 ..................................................................................................12

29 U.S.C. § 254(a) .............................................................................................12

29 U.S.C. § 255(a) ...............................................................................................9

49 U.S.C. § 31132 ..............................................................................................21

49 U.S.C. § 31502 ..............................................................................................21

49 U.S.C. §§ 31502(b), 13501(2), 13102(14) and 31101(1) ............................21

**Other Authorities**

29 C.F.R. § 782.2 ...............................................................................................21

29 C.F.R. § 782.2(a) ...........................................................................................21

29 C.F.R § 782.2(c) ............................................................................................21

29 C.F.R. § 785.35 ........................................................................................12, 20

29 C.F.R. § 785.36 .............................................................................................19

29 C.F.R. § 785.39 ........................................................................................ *passim*

I.      **INTRODUCTION**

Plaintiff seeks conditional certification of a nationwide collective action consisting of more than 4,100 current and former non-exempt employees who worked for Nelson Tree within its seven regions that span 21 states and who were not "paid for time spent traveling to jobsites in which an overnight stay was required when such travel resulted in a workweek in excess of 40 hours . . ." He does so based on three, single-page declarations from himself, his brother, and one co-worker – all of whom worked for Nelson Tree for less than nine months in the same region. These individuals contend that Nelson Tree failed to pay them for the time they spent traveling to remote worksites during normal working hours when staying overnight for work. Their bare allegations, however, are insufficient to establish a companywide policy that violates the FLSA. What's more, Nelson Tree has obtained dozens of declarations showing that Plaintiff is not similarly situated to the putative collective he seeks to represent. And, in any event, this case is inappropriate for collective action treatment due to the myriad individualized determinations that must be made to establish liability as to each opt-in Plaintiff.

As an initial matter, to demonstrate the existence of an illegal companywide policy, Plaintiff must proffer evidence that Nelson Tree failed to pay overtime to non-exempt employees for travel during normal working hours throughout the company. 29 C.F.R. § 785.39. Though Plaintiff, his brother, and one co-worker contend that Nelson Tree failed to pay them for travel to remote work locations when that travel cut across their normal working hours, the 45 declarations submitted by Nelson Tree *from employees in each of its seven regions* demonstrate that these three individuals are not similarly situated with the employees they seek to represent. Those declarations show that (1) consistent with Nelson Tree's understanding and expectation, employees working at remote job sites travel to those locations on Monday mornings prior to the start of their shift and travel home following the end of their last shift of the week, such that they

1

are not traveling during normal working hours as Plaintiff alleges; (2) many employees within the putative class commute from their home to the work location and back each day, only staying overnight when working on "storm jobs," for which they are paid for all of their travel time to and from the job site, contrary to Plaintiff's allegations; and (3) members of the putative collective admit that they were paid for all of their time traveling for the company – including commute time, travel to remote job sites, and equipment runs.

Certification of a collective action is uniquely inappropriate in this case due to the individualized determinations that would need to be made to establish liability for each opt-in Plaintiff as a result of the aforementioned differences. These determinations include:

• Each individual's regular working hours – this must be established because travel time for work entailing an overnight stay is only compensable when it cuts across an employee's normal working hours. These hours differ among members of the putative collective. Indeed, each of the three declarations submitted by Plaintiff reflect different normal working hours, and the declarations produced by Nelson Tree likewise show that some employees work four, ten-hour days; others work five, eight-hour days; while others work shifts that vary by season.

• When employees traveled to and from remote job sites – this must be established because travel time (other than normal commute time) is only compensable when it cuts across normal working hours, not when the travel occurs before the start of regular working hours or after the last shift of the week. As reflected by the declarations offered by Plaintiff, he and the two other declarants only traveled to remote work locations during normal working hours "sometimes," "many times," and/or "most times." On the other hand, the declarations proffered by Nelson Tree reflect that other members of the putative collective never traveled to or from remote work locations during normal working hours.

- Whether employees were paid for their travel time – this must be established because, contrary to Plaintiff's contention, many employees report in their declarations that they were paid for travel time to and from remote work locations.

- If any employees did travel to remote work locations during normal working hours and were not paid for that time, the number of hours they worked that particular week and the amount of time they spent traveling to the remote worksite – this must be established – on a workweek by workweek basis – because there is no liability for unpaid overtime unless the employee worked 40 or more hours during the workweek in question.

- If any employee was not paid for compensable travel time, whether Nelson Tree was aware that the employee traveled during normal working hours – this must be established because, in the Sixth Circuit, an employer is not obligated to pay for unreported working hours.

Hence, Plaintiff lacks evidence sufficient to demonstrate that the there is a class of similarly-situated current and former employees who are bound together by a common unlawful policy of not paying for travel time.  When compared to the declarations offered by Nelson Tree, the scant evidence proffered by Plaintiff, at best, shows that he is asserting a claim that is unique to a limited number of employees and not that of over 4,100 individuals.  Consequently, Plaintiff's motion for conditional certification should be denied.

II.     **FACTUAL BACKGROUND**

A.     **Nelson Tree's Operations Span 21 States and 7 Regions**

Nelson Tree is a vegetation management company that provides utility companies, as well as other public and private entities, with distribution and transmission line clearance and related services, such as emergency storm response, right of way clearance, and herbicide

applications. (Jones Dec. ¶¶2, 3).[1]  Nelson Tree operates in 21 different states and 7 different regions. (*Id*. at ¶4).

To perform this work, Nelson Tree employs tree trimmers, equipment operators, and foremen – each of which are hourly non-exempt positions. (Jones Dec. ¶5).  These employees work within seven different regions scattered around the country, each of which has its own management structure – tree trimmers and equipment operators report to a foreman; a foreman reports to a general foreman; the general foreman reports to a supervisor; and each supervisor reports to a regional manager. (*Id*.).  In total, Nelson Tree employed 4,146 non-exempt employees who received a per diem, signifying an overnight stay in connection with their work, since November 8, 2015. (*Id*. at ¶6).

Many, but not all, of these employees are union members. (Jones Dec. ¶7).  For those employees, the terms and conditions of their employment are governed by 17 different collective bargaining agreements – some of which address travel time and others that do not. (*Id*.).  For instance, Nelson Tree's CBA with the Utility Workers Union of America provides that "[t]ime spent by employees in traveling to and from job sites shall be considered regular working time for which employees shall be paid their usual wage." (*Id*.).  And its agreement with the IBEW Local 1249 states that storm work, which may or may not require an overnight stay, "shall be paid from time of call to time of return." (*Id*.).

### B.    The Amount and Timing of Travel by Nelson Tree Employees Varies

Nelson Tree provides the aforementioned services in both rural and urban settings, depending on the needs of the customers who determine when and where the work is to be performed. (Jones Dec. ¶8).  Generally, the work is scheduled and crew assignments are made

---

[1] All declarations referenced herein are contained in *Defendant's Evidentiary Appendix in Support of Their Brief in Opposition to Plaintiff's Motion for Conditional Certification*, filed contemporaneously herewith.  Citations to the record use the witness' last name, for example: "Jones Dec. ¶_."

based on the size and scope of the work as well as crew availability and location. (*Id*.). The crews performing the work typically vary in size from two to six employees. (*Id*.).

Depending on the region, the crew, and the demands of the client, an employee's regular days and hours of work can vary significantly.[2] Some employees work four, ten-hour days; other employees work five, eight-hour shifts; and in some circumstances, employees may work six or even seven days a week, depending on the workload and need for overtime.[3] Some employees end work at 3:30pm; others at 5:30pm; and some employees work different hours that change from week to week depending on the needs of the utility and the season.[4] In fact, all three of the declarants providing declarations in support of Plaintiff's motion reported different work hours.[5]

Work locations can be as varied as the hours worked. Some employees report to work sites within a short distance from their home and return home each night.[6] These employees are

---

[2] *Compare* Connolly Dec. ¶3 (Monday through Thursday, 7:00am-5:30pm) *with* B. Moore Dec. ¶4 (Monday through Friday, 7:00am-3:30pm) *and* Geerling Dec. ¶5 (Monday through Friday, either 7:00am-3:00pm or 7:30am-5:00pm depending on winter schedule) *and* Vance Dec. ¶3 (Monday through Thursday, 7:00am-5:00pm) *and* Dole Dec. ¶¶5, 7, 11 (regular working hours vary based on the project and the season).

[3] *Compare* Connolly Dec. ¶3 (four ten hour days); Butler Dec. ¶6 (four ten hour days); Kennedy Dec. ¶4 (four ten hour days); Snider Dec. ¶8 (four ten hour days) *with* Schnitzler Dec. ¶3 (five eight hour days); T. Rowland Dec. ¶4 (five eight hour days); E. Rowland, Jr. Dec. ¶6 (five eight hour days); Brugler Dec. ¶4 (five eight hour days).

[4] *Compare* Connolly Dec. ¶4 (5:30pm); Head Dec. ¶5 (5:30pm); Kennedy Dec. ¶4 (5:30pm) *with* Schnitzler Dec. ¶3 (3:30pm); T. Rowland Dec. ¶4 (3:30pm); J. Moore Dec. ¶3 (3:30pm) *and* Geerling Dec. ¶5 (3:00pm or 4:00pm depending on winter schedule); Swett Dec. ¶6 (3:00pm or 4:00pm depending on winter schedule); Benson Dec. ¶8 (3:00 or 4:00pm depending on winter schedule) *and* S. Bouwma Dec. ¶4 (5:00pm); J. Bouwma Dec. ¶6 (5:00pm); Rangel Dec. ¶3 (5:00pm) *and* Dole Dec. ¶5 (5:30pm or 6:00pm depending on winter schedule) *and* Ward Dec. ¶7 (shift times change because of daylight during the winter months) *and* Swett Dec. ¶6 (same).

[5] Joseph Neville "typically" worked 6:30 a.m. to 6:00 p.m., Eric Neville "generally" worked 6:30 a.m. to 6:30 p.m., and Terry Bretz "generally" worked 7:00 a.m. to 6:00 p.m.

[6] *See, e.g.*, Dickensheets Dec. ¶4 ("My normal commute to the jobsite and back is about 30 miles each way."); Rowland Dec. ¶7 ("My average commute to work is about 25 minutes each way."); Moore Dec. ¶5 ("My commute is about 45 minutes."); *see also* Schnitzler Dec. ¶3; T. Rowland Dec. ¶3; E. Rowland, Jr. Dec. ¶8; Brugler Dec. ¶5; Freeman Dec. ¶4; Dickensheets Dec. ¶4; J. Moore Dec. ¶4; B. Moore Dec. ¶5; Perkins Dec. ¶5; Morris Dec. ¶¶4, 6; Dole Dec. ¶5; Geerling Dec. ¶7; Ward Dec. ¶8; Swett Dec. ¶8; Politte Dec. ¶7; S. Bouwma Dec. ¶3; J. Bouwma Dec. ¶5; Vance Dec. ¶7; Tomek Dec. ¶7; Rangel Dec. ¶7; Hall Dec. ¶10; Ross Dec. ¶¶5, 7; Monroe Dec. ¶¶5, 7; Hunnaman Dec. ¶¶8, 11-12; Hiersche Dec. ¶¶8-9; Johnston Dec. ¶8; Segura Dec. ¶15.

informally referred to as "locals." (Jones Dec. ¶9). Some of these employees only travel for work requiring an overnight stay when performing storm work, while other locals never stay away from home overnight for work.[7] With the exception of their normal non-compensable commute time from their home to "the lot" where their Nelson Tree trucks and equipment are located and from the lot back home each day, these employees are paid for all travel time, including travel from the lot to the work location and from job site to job site during the day.[8]

Other employees sometimes report to worksites further away from their homes, such that they choose to stay in hotels during the week and are paid a per diem for each day they work at a remote work location.[9] Many of these employees commute from and to their home each night during some workweeks and on other occasions they stay in a hotel, depending on the distance of the work location from their home, while others work remotely all of the time.[10] When employees chose to stay in a hotel, they travel to the hotel or work site on Monday morning (or late Sunday night), before their regular work hours begin, and they travel back home after their

---

[7] Schnitzler Dec. ¶6; T. Rowland Dec. ¶3; E. Rowland, Jr. Dec. ¶8; Brugler Dec. ¶7; Freeman Dec. ¶4; Dickensheets Dec. ¶7; J. Moore Dec. ¶7; B. Moore Dec. ¶6; Perkins Dec. ¶5; Geerling Dec. ¶9; Ward Dec. ¶10; Swett Dec. ¶11; Politte Dec. ¶10; Aubuchon Dec. ¶12; Benson Dec. ¶5; Tomek Dec. ¶8; Vance Dec. ¶10.

[8] *See, e.g.,* Dickensheets Dec. ¶5 ("Other than the commute back and forth from my home to work, I get paid for all travel time. This includes the time we move from worksite to worksite during the day."); *see also*, Connolly Dec. ¶¶7-8; Butler Dec. ¶13; Kennedy Dec. ¶¶11-12; Snider Dec. ¶7; Head Dec. ¶12; Lafferty Dec. ¶¶8-9; G. Martin Dec. ¶8; Schnitzer Dec. ¶3; T. Rowland Dec. ¶5; E. Rowland, Jr. Dec. ¶11; Brugler Dec. ¶5; Freeman Dec. ¶4; J. Moore Dec. ¶5; B. Moore Dec. ¶5; Winters Dec. ¶7; Burns Dec. ¶11; Tagliavento Dec. ¶15; Flagg Dec. ¶6; Perkins Dec. ¶6; Dishaw Dec. ¶13; Pharoah, Jr. Dec. ¶11; Foster Dec. ¶12; Dole Dec. ¶¶9, 15; Thomas Dec. ¶10; Ward Dec. ¶6; Swett Dec. ¶7; Politte Dec. ¶8; Aubuchon Dec. ¶7; Benson Dec. ¶13; S. Bouwma Dec. ¶9; J. Bouwma Dec. ¶¶7, 12; Vance Dec. ¶8; Tomek Dec. ¶11; Rangel Dec. ¶9; Hall Dec. ¶13; Ross Dec. ¶11; Monroe Dec. ¶11; Hunnaman Dec. ¶14; Hiersche Dec. ¶11; Johnston Dec. ¶11; Segura Dec. ¶13.

[9] *See, e.g.,* Freeman Dec. ¶2; Snider Dec. ¶6; Aubuchon Dec. ¶12; Connolly Dec. ¶4; Butler Dec. ¶8; Kennedy Dec. ¶8; Head Dec. ¶8; Lafferty Dec. ¶5; G. Martin Dec. ¶4; Winters Dec. ¶5; V. Martin Dec. ¶6; Burns Dec. ¶8; Tagliavento Dec. ¶9; Flagg Dec. ¶5; Dishaw Dec. ¶8; Pharoah, Jr. Dec. ¶6; Morris Dec. ¶5; Dole Dec. ¶6; Thomas Dec. ¶5-6; Geerling Dec. ¶10; Ward Dec. ¶11.

[10] *See, e.g.,* Tomek Dec. ¶8; Morris Dec. ¶5; Tagliavento Dec. ¶9; Dole Dec. ¶6; G. Martin Dec. ¶4; Flagg Dec. ¶5; Lafferty Dec. ¶5; Butler Dec. ¶8; Connolly Dec. ¶4; Snider Dec. ¶¶5-6; Kennedy Dec. ¶¶7-8; Segura Dec. ¶8-9.

6

last shift of the week at the end of their regular work hours.[11]  As a result, *unlike Plaintiff*, they are not traveling to or from work locations during regular working hours.

When employees stay in a hotel, they typically park their trucks and equipment – such as bucket trucks that lift workers up into tree canopies – in the hotel parking lot (but, if no room is available at the hotel, at a nearby parking lot), and they are paid from the time they get into the trucks at the parking lot until the time they get back to the parking lot at the end of the day.[12]

Many employees never perform work that requires an overnight stay, unless they are called to perform emergency "storm work."[13]  Storm work requires immediate action, such as in the event of a severe thunderstorm that knocks trees into utility lines. (Jones Dec. ¶10).  Unlike Plaintiff's allegation that he is never paid for travel time to remote work locations, employees who perform storm work are paid for their travel time to the work location, which may be anywhere from an hour to seven or more hours from their home, and from the work location back to their home.[14]  Others are paid from the time they get the storm call until the time they return home, including the time spent getting dressed before traveling to the work location.[15]

---

[11] *See, e.g.,* Connolly Dec. ¶¶5-6; Butler Dec. ¶9; Kennedy Dec. ¶10; Snider Dec. ¶¶9-10; Head Dec. ¶¶9-10; Lafferty Dec. ¶¶6-7; G. Martin Dec. ¶¶6-7; Winters Dec. ¶¶6, 10; V.  Martin Dec. ¶7; Burns Dec. ¶¶9-10; Tagliavento Dec. ¶¶10-11; Flagg Dec. ¶¶8-9; Dishaw Dec. ¶9; Pharoah, Jr. Dec. ¶4; Morris Dec. ¶5; Dole Dec. ¶8; Segura Dec. ¶¶10, 12.

[12] *See, e.g.,* Connolly Dec. ¶8; Butler Dec. ¶13; Kennedy Dec. ¶¶11-12; Snider Dec. ¶7; Head Dec. ¶12; Lafferty Dec. ¶¶8-9; G. Martin Dec. ¶8; Schnitzer Dec. ¶3; T. Rowland Dec. ¶5; E. Rowland, Jr. Dec. ¶11; Brugler Dec. ¶5; Freeman Dec. ¶4; Dickensheets Dec. ¶5; J. Moore Dec. ¶5; B. Moore Dec. ¶5; Winters Dec. ¶¶7-8; Burns Dec. ¶11; Tagliavento Dec. ¶15; Flagg Dec. ¶6; Perkins Dec. ¶6; Dishaw Dec. ¶13; Pharoah, Jr. Dec. ¶11; Foster Dec. ¶12; Dole Dec. ¶¶9, 12, 15; Thomas Dec. ¶10; Ward Dec. ¶6; Swett Dec. ¶7; Politte Dec. ¶13; Aubuchon Dec. ¶7; Benson Dec. ¶8, 13; S. Bouwma Dec. ¶5; J. Bouwma Dec. ¶7; Vance Dec. ¶8;  Rangel Dec. ¶¶8-9; Swett Dec. ¶7; Segura Dec. ¶10.

[13] *See, e.g.,* Schnitzler Dec. ¶6; T. Rowland Dec. ¶3; E. Rowland, Jr. Dec. ¶8; Brugler Dec. ¶7; Freeman Dec. ¶4; Dickensheets Dec. ¶7; J. Moore Dec. ¶7; B. Moore Dec. ¶6; Perkins Dec. ¶5; Geerling Dec. ¶9; Ward Dec. ¶10; Swett Dec. ¶11; Politte Dec. ¶10; Aubuchon Dec. ¶12; Benson Dec. ¶5; Tomek Dec. ¶8.

[14] *See, e.g.,* Connolly Dec. ¶9; Butler Dec. ¶11; Kennedy Dec. ¶13; Snider Dec. ¶11; Head Dec. ¶14; G. Martin Dec. ¶10; Schnitzer Dec. ¶4; T. Rowland Dec. ¶6; E. Rowland, Jr. Dec. ¶9; Brugler Dec. ¶6; Freeman Dec. ¶6; Dickensheets Dec. ¶6; J. Moore Dec. ¶6; B. Moore Dec. ¶6; Winters Dec. ¶11; V. Martin Dec. ¶9; Tagliavento Dec. ¶14; Flagg Dec. ¶10; Perkins Dec. ¶7; Dishaw Dec. ¶10; Pharoah, Jr. Dec. ¶9; Foster Dec. ¶11; Morris Dec. ¶10;

7

To perform their work, employees must operate bucket trucks, weighing well over 10,000 pounds. (Jones Dec. ¶11). To that end, one employee in every crew generally holds a commercial driver's license ("CDL") and drives those vehicles, and only those vehicles, throughout the entire workweek.[16]

### C.    Plaintiff's and the Declarants' Employment with Nelson Tree

Nelson Tree hired Plaintiff on January 16, 2018, as a foreman in Region 460. (Jones Dec. ¶12). Plaintiff reported to general foreman Russell Hanes throughout his employment with Nelson Tree. (*Id.*). Nelson Tree terminated Plaintiff for insubordination on September 28, 2018, eight months after he started working for the company. (*Id.*).

Plaintiff's brother, opt-in plaintiff Eric Neville, was hired as a Trimmer C on January 18, 2018, two days after Nelson Tree hired Plaintiff. (Jones Dec. ¶13). Like his brother, Eric Neville was assigned to Region 460 and reported to Russell Hanes. (*Id.*). Eric Neville's employment with Nelson Tree ended with his resignation on July 27, 2018. (*Id.*).

Nelson Tree most recently hired opt-in plaintiff Terry Bretz on September 12, 2017, as a Trimmer A, also in Region 460 where he spent the entirety of his employment. (Jones Dec. ¶14). Bretz last worked for Nelson Tree on April 6, 2018. (*Id.*).

---

Dole Dec. ¶¶13-14; Thomas Dec. ¶11; Geerling Dec. ¶9; Ward Dec. ¶10; Swett Dec. ¶11; Politte Dec. ¶10; Aubuchon Dec. ¶11; Benson Dec. ¶15; Tomek Dec. ¶10; Hall Dec. ¶14; Hunnaman Dec. ¶15; Hiersche Dec. ¶12; Segura Dec. ¶14.

[15] Hall Dec. ¶14; Ross Dec. ¶12; Hiersche Dec. ¶12; Hunnaman Dec. ¶15; Dishaw Dec. ¶10; Foster Dec. ¶11; Pharoah Dec. ¶9; Morris Dec. ¶10; Thomas Dec. ¶11; Martin Dec. ¶9; Flagg Dec. ¶10.

[16] *See, e.g.,* Butler Dec. ¶4; T. Rowland Dec. ¶8; E. Rowland, Jr. Dec. ¶3; Brugler Dec. ¶3; Dickensheets Dec. ¶10; B. Moore Dec. ¶3; Winters Dec. ¶12; Martin Dec. ¶10; Burns Dec. ¶5; Tagliavento Dec. ¶6; Dishaw Dec. ¶¶4-5; Pharoah, Jr. Dec. ¶10; Foster Dec. ¶3; Dole Dec. ¶10; Thomas Dec. ¶2; Geerling Dec. ¶3; Swett Dec. ¶3; Aubuchon Dec. ¶3; Benson Dec. ¶2; Hall Dec. ¶5; Hunnaman Dec. ¶6; Hiersche Dec. ¶5.

## III.    PROCEDURAL BACKGROUND

Plaintiff filed his collective action complaint for an alleged violation of the FLSA's overtime provisions on November 8, 2018.  Subsequently, four former Nelson Tree employees, including Plaintiff's own brother, filed consent forms to join the lawsuit.[17]

Prior to conducting discovery, Plaintiff filed his motion for conditional certification on January 30, 2019, seeking conditional certification of a collective action consisting of "all of Defendant's current or former hourly employees who have not been paid for time spent traveling to jobsites in which an overnight stay was required when such travel resulted in a workweek in excess of 40 hours at any time during the three-year period preceding the filing of the Complaint to the present."  For the reasons set forth below, Plaintiff's motion should be denied.

## IV.    LAW AND ARGUMENT

### A.    Conditional Certification "Is Not Automatic"

The FLSA permits collective actions "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees *similarly situated*." 29 U.S.C. § 216(b)(emphasis added).  The Sixth Circuit uses a two-tiered certification approach for deciding whether a suit can proceed as a collective action. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583-585 (6th Cir. 2009).

At the first stage, a plaintiff's burden that he and others are similarly situated can be met by showing that "their claims [are] unified by common theories of [defendant's] statutory violations" or that they "suffer from a single, FLSA-violating policy, and . . . proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *O'Brien*, 575

---

[17] These individuals are Terry Bretz (Doc. 8), Bradley Rafter (Doc. 9), Eric Jason Neville (Doc. 10), and Roger Pryor (Doc. 11).  Roger Pryor, who opted into the lawsuit on January 30, 2019, last worked for Nelson Tree on December 29, 2015. (Jones Dec. ¶15).  Because this was more than three years prior to the filing of the lawsuit, any claim by Pryor is untimely. 29 U.S.C. § 255(a).

F.3d at 585. At this stage, Plaintiff must make a "modest factual showing" that he is similarly situated to the individuals he seeks to represent. "A 'modest' showing does not, however, mean one that the court will rubber-stamp as a proposed class. Plaintiffs must present some evidence to support allegations that others are similarly situated." *Lutz v. Huntington Bancshares, Inc.*, 2013 U.S. Dist. LEXIS 56477, *5-6 (S.D. Ohio Apr. 19, 2013).

While Plaintiff touts this more "lenient" standard in his motion for conditional certification, courts have reminded litigants that "conditional certification is not automatic." *Neff v. U.S. Xpress, Inc.*, 2013 U.S. Dist. LEXIS 36914, *6 (S.D. Mar. 18, Ohio 2013).[18] The Southern District of Ohio has also stated that courts "should exercise caution in granting conditional certification, because the Sixth Circuit has held 'that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable.'" *O'Neal v. Emery Fed. Credit Union*, 2013 U.S. Dist. LEXIS 110383, *14 (S.D. Ohio Aug. 6, 2013). Other courts have similarly urged caution to avoid wasting the parties' time and resources in cases that do not warrant certification because "a plaintiff's discovery demands upon conditional certification may impose a tremendous financial burden to the employer." *Adair v. Wis. Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, *10 (E.D. Wis. Sept. 11, 2008)(internal quotes omitted); *see also*, *Rudd v. T.L. Cannon Corp.*, 2011 U.S. Dist. LEXIS 21061, *17 (N.D.N.Y. Jan. 4, 2011)(courts must be "mindful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs" and avoid "the potential for overreaching," with the resulting "loss of efficiencies envisioned by the drafters of the FLSA").[19]

---

[18] Plaintiff also references the "broad remedial goal" of the FLSA. However, the Supreme Court has recently cautioned against relying on the "broad remedial goal" of the FLSA "as a useful guidepost for interpreting the FLSA." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). Instead, the Supreme Court stated that this reliance is based "on the flawed premise that the FLSA pursues its remedial purpose at all costs." *Id.*

[19] This core principle of aggregate or representative litigation was underscored in the Supreme Court's landmark decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541 (2011). Although *Dukes* was decided

For these reasons, this Court has applied the following factors to guide its decision on conditional certification: (1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; (3) whether evidence of a widespread discriminatory plan was submitted; and (4) whether a manageable class exists as a matter of "sound class management." *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 U.S. Dist. LEXIS 129955, *8 (S.D. Ohio Aug. 14, 2017); *Atkinson v. TeleTech Holdings, Inc.*, 2015 U.S. Dist. LEXIS 23630, *6 (S.D. Ohio Feb. 26, 2015). Here, Plaintiff lacks evidence of a "widespread discriminatory plan." He merely submitted three conclusory declarations from former employees (out of a putative class of more than 4,100 employees), each of whom worked in the same region. None of the declarations identify a companywide policy that violates the FLSA or any other potential plaintiffs. And, because the collective is not similarly-situated, no manageable class exists because individualized inquiries will be necessary to determine liability for each opt-in Plaintiff.

**B.** **Plaintiff Lacks Evidence that the Individuals He Seeks to Represent are Unified by a Widespread FLSA-Violating Policy**

**1.** **Nelson Tree's Declarations Show that Members of the Collective Did Not Suffer the Same FLSA Violations that Plaintiff Alleges**

Plaintiff's motion for conditional certification must be denied unless he provides evidence that his claims and those of the employees he seeks to represent "suffer from a single, FLSA-violating policy." *O'Brien*, 575 F.3d at 583. To that end, Plaintiff contends Nelson Tree violated the FLSA by failing to pay overtime for time spent traveling to remote work locations.

---

under Fed. R. Civ. P. 23, two principles underlying that decision apply to all aggregate litigation in order to achieve the overarching goals of efficiency and due process that lay at the foundation of the Court's decision in *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989)("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity"). The first is "commonality," which requires the identification of a common question that will generate a common answer "apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551. Second, the Supreme Court expressly disapproved "Trial by Formula," a phrase that encompasses trial plans based upon sampling methodologies that prevent defendants from litigating their statutory defenses to individual claims. *Id.* at 2561. Plaintiff's request for judicial intervention, therefore, must be analyzed to determine whether the specific "violation of law" upon which he bases his claims for overtime pay – and the claims of all other potential opt-in plaintiffs – can be resolved collectively consistent with these principles.

It is well-established that normal commute time, to and from a job site, is non-compensable. 29 C.F.R. § 785.35 ("normal travel from home to work is not worktime").[20] "The same is true for travel to and from lodgings, such as a hotel." *Moore v. Performance Pressure Pumping Servs., LLC*, 2017 U.S. Dist. LEXIS 63384, *31-32 (W.D. Tex. Apr. 26, 2017).  But travel time is compensable when it (1) requires an overnight stay **and** (2) cuts across an individual employee's regular working hours on working or nonworking days. 29 C.F.R. § 785.39; *Bassett v. TVA*, 2013 U.S. Dist. LEXIS 83203, *23 (W.D. Ky. June 13, 2013)("the FLSA does not generally require a company to pay for overnight, out-of-town travel outside of regular work hours").  Plaintiff lacks evidence of a companywide policy violating this regulation.[21]

Plaintiff, nonetheless, asks this Court to conditionally certify a class of:

> All of Defendant's current or former hourly employees who have not been paid for time spent traveling to jobsites in which an overnight stay was required when such travel resulted in a workweek in excess of 40 hours at any time during the three-year [sic] preceding the filing of the Complaint to the present.

(Doc. 12 at PgID 61).  In support of his request, Plaintiff avers that he traveled "many times" from his home to "out-of-town jobs on Sunday during my normal working hours" and "most times" he traveled back home on Friday during normal work hours. (Joseph Neville Dec. at ¶ 5). Terry Bretz and Eric Neville make similar assertions in their declarations. (Bretz Dec. at ¶ 5; Eric Neville Dec. at ¶ 5).  The declarations of all three individuals also reference unidentified co-

---

[20] *See also*, 29 U.S.C. § 254(a)(the Portal-to-Portal Act provides that employers do not need to compensate employees for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and activities which are preliminary to or postliminary to said principal activity or activities"); FLSA 2018-18 at p. 2 (same).

[21] In referencing this regulation, Nelson Tree does not waive any argument that the Department of Labor's interpretation of the FLSA, as set forth in 29 C.F.R. § 785.39, is unreasonable and not entitled to deference.  There is no basis for this regulation in the statute.  To the contrary, the 1947 amendments to the FLSA, known as the Portal to Portal Act (29 U.S.C. §§251-262), exempts from compensable time that time which is spent "traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. §254.  In other words, the FLSA explicitly states that time spent traveling to the work location is "not compensable."  As a result, the agency's interpretation of the statute as set forth in 29 C.F.R. § 785.39 is not entitled to deference and must be disregarded.

workers who stayed overnight in hotels, but they do not contend that these individuals traveled to or from remote work locations during normal working hours, which is necessary to convert the travel time into compensable working hours, nor do they allege that these other individuals were not paid for their travel time. The personal experiences of these three former employees, out of a putative collective of more than 4,100 employees (an infinitesimal 0.075%), does not evidence a common FLSA-violating policy. This is especially true considering the evidence proffered by Nelson Tree shows that some employees only stayed overnight when performing storm work. And employees performing storm work were paid for their travel to and from remote work locations – whether or not the travel time cut across normal working hours.

Likewise, Plaintiff's class definition encompasses employees who, consistent with Nelson Tree's understanding and expectation, exclusively traveled to remote work locations *outside* of normal working hours – prior to the start of their shift on Monday mornings and after the end of their final shift of the week. The declarations of these individuals confirm that *they never traveled to or from remote work locations during normal working hours*, establishing that they are not unified with Plaintiff by a common FLSA-violating practice. What's more, the declarations prove that, dissimilar from the allegations of Plaintiff, his brother, and Bretz, Nelson Tree does, in fact, pay for travel time, including travel time involving an overnight stay.[22]

In presenting these declarations, Nelson Tree is not asking the Court to make credibility determinations. It merely asks the Court to consider all of the evidence presented, which demonstrates that Plaintiff lacks proof of a companywide FLSA-violating policy. *O'Neal*, 2013

---

[22] Connolly Dec. ¶9; Butler Dec. ¶11; Kennedy Dec. ¶13; Snider Dec. ¶11; Head Dec. ¶14; Martin Dec. ¶10; Schnitzler Dec. ¶4; T. Rowland Dec. ¶6; E. Rowland, Jr. Dec. ¶9; Brugler Dec. ¶6; Freeman Dec. ¶6; Dickensheets Dec. ¶6; J. Moore Dec. ¶6; B. Moore Dec. ¶6; Winters Dec. ¶11; Martin Dec. ¶9; Tagliavento Dec. ¶14; Flagg Dec. ¶10; Perkins Dec. ¶7; Dishaw Dec. ¶10; Pharoah, Jr. Dec. ¶9; Foster Dec. ¶11; Morris Dec. ¶10; Dole Dec. ¶13-14; Thomas Dec. ¶11; Geerling Dec. ¶9; Ward Dec. ¶10; Swett Dec. ¶11; Politte Dec. ¶10; Aubuchon Dec. ¶11; Benson Dec. ¶5; Tomek Dec. ¶10; Hall Dec. ¶14; Ross Dec. ¶12; Hunnaman Dec. ¶15; Hiersche Dec. ¶12; Johnston Dec. ¶12; Segura Dec. ¶13.

U.S. Dist. LEXIS 110383 at *30. (though not making "credibility determinations at this stage," defendant's declarations did "serve as evidence that the alleged FLSA violations suffered by Plaintiffs were not the produce of a company-wide policy").  Thus, Plaintiff's motion must be denied because he lacks evidence of a common unlawful policy.

### 2.    Plaintiff's Declarations Fail to Establish the Existence of a Widespread Illegal Company Policy or Procedure

Despite all of this, Plaintiff argues that the three declarations he submitted are sufficient to justify certification because he needs to establish "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (Doc. 12, at PgID 65, *citing*, *Gentrup v. Renovo Servs., LLC*, 2008 U.S. Dist. LEXIS 121479 (S.D. Ohio Jan. 24, 2008)(where, in a six paragraph order, the court conditionally certified a collective action because the plaintiff, unlike Plaintiff in this case, identified a single policy applicable to *all employees*).  But Plaintiff failed to satisfy his own standard: his evidence consists of three declarations that fail to establish that more than 4,000 individuals were all victims of a single unlawful decision, policy, or plan.

For example, in *O'Neal*, the plaintiff's evidence in support of conditional certification, like the instant case, consisted of only three declarations. *Id*. at *29.  There, the court considered this "small sample size of three" relative to the putative class size of 376, spread across 35 states. *Id*. at *35.  The three plaintiffs who submitted declarations stated "that they worked more than forty hours per week but were neither paid overtime nor the minimum hourly wage for hours worked." *Id*. at *29.  In rebuttal, the defendant submitted declarations of managers who stated that they "do not permit [putative class members] to work more than their contracted hours." *Id*. at *29-30.  Ultimately, the court determined that the plaintiff's declarations could not establish an FLSA-violating, companywide policy because they failed to attest to "personally observing"

14

any other employees work more than forty hours per week, failed to "claim to have discussed these matters in any way with any other employees," and failed to "provide the names of any co-workers who worked hours for which they were not paid." *Id*. at *30-31. As a result, the court denied the plaintiffs' motion for conditional certification, reasoning that:

> In short, the statements provided in support of Plaintiff's motion for conditional certification *do not include facts from which the Court could draw an inference* that other Emery loan officers worked more than their contracted hours or worked more than forty hours a week without being paid overtime compensation. ***Evidence that Plaintiff herself and the two opt-in Plaintiffs have been deprived of overtime or minimum wage compensation is not sufficient to demonstrate a class of similarly situated employees absent facts from which the Court could draw an inference that they have actual knowledge that their experience was not unique.*** These three individuals worked separate and apart from other employees performing the same or similar job duties for the employer. Therefore, unlike in cases . . . where the plaintiffs worked amongst their peers and could observe their employment experiences, it is not reasonable in this case to "infer" that Plaintiffs would have learned during the normal course of employment how the company operates and what company policies were.

*Id*. at *31-32 (emphasis added).

In *Lacy v. Reddy Elec. Co*., 2011 U.S. Dist. LEXIS 142050 (S.D. Ohio Dec. 9, 2011)(Rice, J.), this Court addressed a similar issue, where two plaintiffs moved for conditional certification based solely on their own declarations. This Court reasoned that such limited evidence was insufficient:

> If the Court were looking at only the Amended Complaint and Plaintiffs' declarations, the Court would very likely overrule Plaintiffs' Motion for Conditional Certification. Those documents contain nothing more than conclusory allegations that other Reddy employees are similarly situated. Specific allegations concerning those other employees are sorely lacking.

*Id.* at *11-12. It was only because of evidence contained in the plaintiffs' deposition transcripts that this Court decided to grant conditional certification. *Id.* at *12. But 18 months later, this Court decertified the class after no other plaintiff remained in the case. *Lacy v. Reddy Elec. Co.*, 2013 U.S. Dist. LEXIS 97718, *6 (S.D. Ohio July 11, 2013).

Consistent with *Lacy* and *O'Neal*, the court in *Combs v. Twins Grp., Inc.*, 2016 U.S. Dist. LEXIS 172797, *8-9 (S.D. Ohio Dec. 14, 2016), held that a single declaration, which "does not contain facts showing that [the declarant] has actual or even constructive knowledge that his fellow crew members . . . worked overtime hours for which they were not paid," cannot satisfy even the "modest" or "lenient" evidentiary standard. *Id.* The court reasoned that "permitting this case to proceed as a collective action on so little evidence would effectively eliminate the requirement that plaintiffs must make at least a 'modest factual showing' that they are similarly situated to obtain conditional certification." *Id.* at *9.

Here, like in *O'Neal*, the three, single-page, cookie-cutter declarations offered by Plaintiff fail to establish that the declarants have actual knowledge that the more than 4,000 members of the putative collective were all victims of a single unlawful decision, policy, or plan. Each of the three declarations contains an *identical* Paragraph 7: "My co-workers similarly traveled to and from their home communities and the out-of-town jobs. They would stay overnight in hotels." But the three declarations do not provide:

- The basis for this knowledge;
- Who these unidentified co-workers are;
- What state or region these co-workers worked in;
- What their job titles or duties were or if they were non-exempt;
- Who their supervisors were;
- What their normal working hours were;
- When the unidentified co-workers traveled to and from their home communities;
- Whether the unidentified co-workers were paid for their travel time; and
- Any other information to establish that these co-workers were similarly situated.

16

The declarations' final paragraph merely states that "*I* was not paid for the time *I* spent traveling to and from my home community to jobs that required me to stay overnight." (Dec. of J. Neville, Bretz, E. Neville, ¶¶8, Doc. 12-1, PgID 71-73). They provide no information, based on personal knowledge, as to what occurred to people other than the three declarants. In fact, they fail to say whether <u>anyone else</u> was not paid for their travel time. (Dec. of J. Neville, Bretz, E. Neville, ¶¶7, 8, Doc. 12-1, PgID 71-73). This missing information is fatal to Plaintiff's motion for conditional certification as it does not allow even an inference that Plaintiff is similarly situated to the putative collective or that all putative collective members were all subject to an illegal companywide policy.

Due to these infirmities, the portions of the declarations offered by Plaintiff relating to unidentified co-workers should be disregarded. For instance, in *O'Neal*, the court held that "because Plaintiffs' statements in this case do not establish the basis of their knowledge about other employees' experiences, these portions of the statements are entitled to little or no weight" and "the appropriate method for handling these infirmities is to disregard them in inquiring whether Plaintiffs and the absent potential class members are similarly situated." *O'Neal*, 2013 U.S. Dist. LEXIS 110383 at *23.

## C. Plaintiff's Claims Require Individualized Determinations that would Render a Collective Action Unmanageable

For the reasons discussed herein, the putative collective is not similarly situated. As demonstrated by the declarations offered by Nelson Tree, individuals falling within the proposed class definition did not experience the alleged FLSA violations asserted by Plaintiff. They did not travel to and from remote job locations during regular working hours, and they were paid for travel time. Because there is no common evidence upon which liability can be determined for those within the putative collective, individualized determinations will be necessary for each

putative collective member for each week that they worked for Nelson Tree, spanning back over three years in some cases. This renders a collective action unmanageable. *Myers v. Hertz Corporation*, 2006 U.S. Dist. LEXIS 100597, *13 (E.D.N.Y. May 18, 2006)(denying motion for conditional certification because any determination of a right to overtime would require "a highly individualized analysis"). Indeed, for each claim of uncompensated travel time involving overnight travel, ***each*** opt-in Plaintiff would need to establish the following for **each** workweek at issue *to prove liability*:

1. **What are the "regular working hours" of each opt-in Plaintiff?**

Because travel time is only compensable during regular working hours, to establish liability, each opt-in Plaintiff will need to provide evidence of their regular working hours for each workweek at issue – an inquiry that could require more than 150 individual determinations per person insofar as their regular working hours can vary by week based on the job they are working on, the time of the year, and the demands of the utility. 29 C.F.R. § 785.39. This is not a fact that can be established on a representative basis. In fact, the three declarations offered by Plaintiff show that each of those individuals had different working hours. And, as the DOL has noted, in instances where regular work hours vary or are inconsistent, a fact finder "carefully scrutinizes" and reviews employee's time records to determine if there is a "pattern sufficient to establish regular work hours." DOL Opinion Letter, FLSA 2018-18 (April 12, 2018).[23]

2. **When did each opt-in Plaintiff work "overnight" trips and under what circumstances?**

Each opt-in Plaintiff will need to establish the weeks during which they worked on an "overnight" job because travel time to and from work locations is only compensable for overnight trips. 29 C.F.R. § 785.39. In addition, travel time involving an overnight stay for

---

[23] Available at: https://www.dol.gov/whd/opinion/FLSA/2018/2018_04_12_01_FLSA.pdf

regular, scheduled work will need to be distinguished from emergency work, referred to as "storm work," for which employees are paid for their travel time and to which a different regulation applies. 29 C.F.R. § 785.36 ("Home to work in emergency situations").[24]

     **3.**     **When did each opt-in Plaintiff travel to and from the work location that required an overnight stay?**

Travel time is compensable only if it required an overnight stay *and* occurred during "regular working hours." 29 C.F.R. § 785.39. Therefore, to determine liability, each opt-in Plaintiff would need to show – for each workweek at issue – *what time of the day* they traveled to and from the remote work location. This is necessary evidence to establish liability and cannot be proven on a representative basis because, unlike Plaintiff, other employees performing remote work exclusively travel to the work location before the start of their shift on Monday, then travel home after their last shift of the week.[25] In these cases, there is no liability because the travel took place outside regular working hours. And Nelson Tree does not maintain records showing when employees traveled to and from remote work locations, so this determination would require individualized testimony on a workweek-by-workweek basis. Further complicating matters is the fact that, as admitted by the Neville brothers and Bretz, they do not always travel to and from remote work locations during regular working hours. Therefore, liability can only be established by each individual plaintiff providing evidence of the weeks in which they traveled to and from remote work locations during regular working hours.

---

[24] Many employees only perform work requiring an overnight stay when called out on "storm work." *See, e.g.,* Schnitzler Dec. ¶6; T. Rowland Dec. ¶3; E. Rowland, Jr. Dec. ¶8; Brugler Dec. ¶7; Freeman Dec. ¶4; Dickensheets Dec. ¶7; J. Moore Dec. ¶7; B. Moore Dec. ¶6; Perkins Dec. ¶5; Geerling Dec. ¶9; Ward Dec. ¶10; Swett Dec. ¶11; Politte Dec. ¶10; Aubuchon Dec. ¶12; Benson Dec. ¶5.

[25] Connolly Dec. ¶¶5-6; Butler Dec. ¶9; Kennedy Dec. ¶10; Snider Dec. ¶¶9-10; Head Dec. ¶¶9-10; Lafferty Dec. ¶¶6-7; Martin Dec. ¶¶6-7; Burns Dec. ¶¶9-10; Tagliavento Dec. ¶¶10-11; Flagg Dec. ¶¶8-9; Pharoah, Jr. Dec. ¶4; Morris Dec. ¶5; Dole Dec. ¶8; Segura Dec. ¶¶10, 12.

**4.** **If compensable travel time occurred, how long was spent traveling and was it in a workweek that exceeded 40 hours?**

To establish liability for unpaid overtime, each opt-in Plaintiff will need to demonstrate for each workweek in which they assert an entitlement to unpaid compensable travel time that they worked 40 or more hours that week. This is a more complicated analysis than it may appear. As an initial matter, each opt-in Plaintiff will need to establish the amount of time they spent traveling to and from remote work locations *during regular working hours*. That time, which will likely vary by week, will need to be added to their actual hours worked for that particular week to determine if they worked over 40 hours. If not, there is no liability.

While Nelson Tree maintains records of the hours that an employee works each day, those records include non-compensable commute time from the hotel to the worksite and back each day. Although employees are paid for that time, it is not compensable work time under the FLSA and cannot be considered when determining whether an employee worked over 40 hours in a week. 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime").[26] Thus, such time will need to be removed from compensable hours worked to determine if overtime is owed for each opt-in Plaintiff and for each week that they allegedly traveled during regular working hours.

---

[26] Connolly Dec. ¶8; Butler Dec. ¶13; Kennedy Dec. ¶¶11-12; Snider Dec. ¶7; Head Dec. ¶12; Lafferty Dec. ¶¶8-9; G. Martin Dec. ¶8; Schnitzer Dec. ¶3; T. Rowland Dec. ¶5; E. Rowland, Jr. Dec. ¶11; Brugler Dec. ¶5; Freeman Dec. ¶4; Dickensheets Dec. ¶5; J. Moore Dec. ¶5; B. Moore Dec. ¶7; Winters Dec. ¶¶7-8; Burns Dec. ¶11; Tagliavento Dec. ¶15; Flagg Dec. ¶6; Perkins Dec. ¶6; Dishaw Dec. ¶13; Pharoah, Jr. Dec. ¶11; Foster Dec. ¶12; Dole Dec. ¶¶9, 12, 15; Thomas Dec. ¶10; Ward Dec. ¶6; Swett Dec. ¶7; Politte Dec. ¶13; Aubuchon Dec. ¶7; Benson Dec. ¶8, 13; S. Bouwma Dec. ¶5; J. Bouwma Dec. ¶7; Vance Dec. ¶8; Rangel Dec. ¶¶8-9; Swett Dec. ¶7; Hall Dec. ¶13; Ross Dec. ¶11; Monroe Dec. ¶11; Hunnaman Dec. ¶13; Hiersche Dec. ¶11; Johnston Dec. ¶11; Segura Dec. ¶13.

### 5.      Does the Motor Carrier Act Exemption apply?

The Motor Carrier Act ("MCA") provides an exemption to the overtime requirement of the FLSA.  The MCA exemption applies to any employee "subject to the jurisdiction of the Secretary of Transportation" whose "duties directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." 29 U.S.C. § 213(b)(1); 29 C.F.R § 782.2(c).  More specifically, the MCA exemption is available to: (1) employees of motor carriers or private motor carriers; (2) involved in the transportation of goods or persons in interstate commerce; and (3) whose duties affect highway safety. 49 U.S.C. §§ 31502(b), 13501(2), 13102(14) and 31101(1); 29 C.F.R. § 782.2(a); *Troutt v. Stavola Bros.*, 107 F.3d 1104, 1106-1107 (4th Cir. 1997).  A "commercial motor vehicle" is defined as a vehicle used in interstate commerce that has a gross vehicle weight rating of at least 10,001 pounds. 49 U.S.C. § 31132; *Yu Xing Zheng v. Shuguang Shi*, 2014 U.S. Dist. LEXIS 129076, *7-8 (D. Md. Sept. 16, 2014).

Here, many members of the putative class drive "bucket trucks" weighing more than 10,000 pounds.[27]  Therefore, the fact finder will need to determine whether each opt-in Plaintiff is subject to the MCA exemption for each workweek at issue, thereby exempting them from the FLSA's overtime requirement. 29 U.S.C. § 13(b)(1); 49 U.S.C. § 31502; 29 C.F.R. § 782.2.

### 6.      Did Nelson Tree know of the alleged uncompensated travel time?

The Sixth Circuit has made clear that "an employee must show that the employer knew or should have known that he was working overtime . . . the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions.  An employer cannot satisfy an

---

[27] Butler Dec. ¶4; T. Rowland Dec. ¶8; E. Rowland, Jr. Dec. ¶3; Brugler Dec. ¶3; Dickensheets Dec. ¶10; B. Moore Dec. ¶3; Winters Dec. ¶12; Martin Dec. ¶10; Burns Dec. ¶5; Tagliavento Dec. ¶6; Dishaw Dec. ¶¶4-5; Pharaoh, Jr. Dec. ¶10; Foster Dec. ¶3; Dole Dec. ¶10; Thomas Dec. ¶2; Geerling Dec. ¶3; Swett Dec. ¶3; Aubuchon Dec. ¶3; Benson Dec. ¶2; Hall Dec. ¶5; Hunnaman Dec. ¶6; Hiersche Dec. ¶5.

obligation that it has no reason to think exists." *White*, 699 F.3d at 876. Consequently, each opt-in Plaintiff must establish that Nelson Tree was aware of their travel during working hours, necessitating an individualized inquiry.

### 7. Plaintiff's Proposed Class Definition Necessitates Individualized Inquiries to Ascertain Membership in the Collective

Plaintiff defines the class as all current and former employees who have not been paid for time spent traveling to jobsites in which an overnight stay was required. While Nelson Tree does not maintain records showing who traveled for an overnight stay or when they traveled, it does keep records of per diem payments to employees, which normally correlate with an overnight stay during the workweek. (Jones Dec. ¶16). Nelson Tree, however, does not separately track payments for travel time, as opposed to regular working hours. (*Id.*). For instance, when an employee performs storm work, they are paid for their travel to and from the remote work location, but that time is recorded as regular working hours, indistinguishable from travel time. (*Id.*). As a result, without an individualized inquiry of each employee's storm work and other travel time, it is not possible to determine the true scope of the class – only that there are over 4,100 employees who received per diems for overnight trips in the last three years. Equally problematic is the fact that the class definition includes individuals who never traveled during normal working hours, meaning there is no liability for unpaid overtime to these individuals.

For all of these reasons, liability determinations for each opt-in Plaintiff will require the resolution of highly individualized factual inquiries. As a result, Plaintiff's claim is not amenable to representative litigation, as there is no common evidence that can establish liability as to the entire collective. Thus, Plaintiff's motion for conditional certification should be denied.

### D.       Plaintiff Lacks Evidence that He is Similarly Situated to the Putative Class

The *only* evidence Plaintiff put forth consists of his own declaration, the declaration of his brother, and that of one other employee – all of whom worked for Nelson Tree for less than nine months in the same region and two of whom reported to the same general foreman.  None of the declarations identify any other potential plaintiffs.  These declarations do not and cannot satisfy Plaintiff's burden of making even a "modest factual showing" that he is similarly situated to the putative collective of more than 4,000 current and former employees.  Indeed, they show the opposite – unlike Plaintiff, other putative class members *did not travel to and from remote work locations during regular working hours* and *other co-workers were paid for travel time*.

Further evidence that Plaintiff is not similarly-situated to the putative collective is that, as explained above, many employees within the collective hold CDLs, drive bucket trucks, and are overtime exempt under the Motor Carrier Act Exemption.  In addition, other employees, unlike these three individuals, are subject to the terms of collective bargaining agreements that expressly provide for the payment of travel time.  Thus, the 45 declarations submitted by Nelson Tree confirm that Plaintiff is not similarly situated to the collective he seeks to represent.

Moreover, to warrant a finding that "other similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *O'Neal*, 2013 U.S. Dist. LEXIS 110383 at *25 (emphasis in original); *Brandenburg*, 2017 U.S. Dist. LEXIS 129955 at *11 (Rice, J.).  Courts within this district, including this one, regularly deny motions for conditional certification where the plaintiffs have insufficient evidence or "actual knowledge" of other employees' activities.  Here, Plaintiff asks this Court to issue notice of this case to over 4,100 individuals based on three

conclusory, cookie-cutter declarations, which fail to demonstrate that Plaintiff is similarly-situated to the individuals he seeks to represent.

At most, Plaintiff's declarations establish that he, his brother, and one other former employee believe they were not paid for travel that occurred during regular working hours. *Id.* Plaintiff has no evidence that this alleged violation has befallen any other employee, much less over 4,000 employees companywide. Plaintiff merely states that other unidentified co-workers stayed overnight in hotels without indicating whether they traveled during normal working hours or were not paid for such travel time. This is insufficient to support conditional certification. *See, e.g., Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 928-929 (D. Ariz. 2010)(three declarations and several exhibits were an insufficient evidentiary basis for conditional certification).

### 1. Plaintiff Lacks Evidence Sufficient to Justify Certification of a Companywide Collective Action

Courts routinely refuse to grant conditional certification on a companywide basis where the plaintiff lacks evidence of anything other than a localized or isolated issue. For example, in *Dieffenbauch v. Rhinehart R.R. Constr.*, 2018 U.S. Dist. LEXIS 147980, *12 (N.D.N.Y. Aug. 30, 2018), the court declined to grant conditional certification to a nationwide class where the plaintiff's allegation that the defendant's travel policy applied to is employees nationwide was "not sufficiently specific to merit certification of a nationwide class." *Id.* The court noted that the plaintiff "fails to provide any corroborating evidence . . . that defendant's policy" extended nationwide. *Id.* Accordingly, the court held that "the geographic scope of the conditional class should be limited to comport with the factual support that has been provided by Plaintiff." *Id.*

Similarly, in *Conklin v. 1-800 Flowers.com, Inc.*, 2017 U.S. Dist. LEXIS 126733, *8-9 (S.D. Ohio Aug. 10, 2017), plaintiffs – call center employees – sought nationwide conditional certification based on only three declarations of employees who worked in the same call center.

But the court held that the plaintiffs have not "presented sufficient evidence to justify the conditional certification of a nationwide class. The three declarations supporting Plaintiffs' motion contain information only about employees at Defendant's Hebron call center." *Id*. at *13.

Here, as in *Conklin*, Plaintiff presented only three declarations, all from the same region, two of which came from employees who are brothers and worked under the same supervisor. None of the declarations allege that the purported FLSA violations extend beyond their own location. Hence, Plaintiff has given this Court insufficient evidence "to warrant the conditional certification of a nationwide class." *Conklin,* 2017 U.S. Dist. LEXIS 126733 at *13. The Court, therefore, should deny Plaintiff's motion for certification of a collective action spanning 21 states and more than 4,100 putative class members that is based on three declarations.

### 2. The Cases Cited by Plaintiff Do Not Support His Arguments

Plaintiff cites to, but barely discusses, four cases to support his unfounded claim that "this and other Courts have conditionally certified collective actions" with "similar (or less) evidence." (Doc. 12, at PgID 67). First, Plaintiff cites to *Brandenburg*, 2017 U.S. Dist. LEXIS 129955 at *12, for the proposition that this Court granted conditional certification based on a single declaration. (Doc. 12, at PgID 67). In *Brandenburg*, the plaintiff's declaration asserted he was similarly situated to 141 other pizza delivery drivers and provided actual knowledge and "reasons as to why his understanding was both well-informed and reasonable." *Id*. at *10. That declaration, unlike those in this case, stated the basis of the plaintiff's knowledge of unlawful companywide policies – as conveyed to him "by three managers;" stated the identities of "at least four other delivery drivers" subject to the same unlawful policy; and "set forth specific facts" relating to the unlawful policy. *Id*. at *10-12. "From those facts, the Court may reasonably infer that the job duties and wage and hour practices for delivery drivers were set by [defendant] and uniform across all [defendant's] locations." *Id*. at *11-12. The *actual knowledge* and degree

25

of *specificity* offered in the *Brandenburg* declaration stands in stark contrast to the declarations offered here that fail to offer any evidence of an unlawful companywide policy.

Plaintiff also cites *Funk v. Airstream, Inc.,* 2018 U.S. Dist. LEXIS 82666 (S.D. Ohio May 16, 2018), claiming that "this Court certified a collective of employees where plaintiff filed only two declarations in support of her motion." (Doc. 12, PgID 67).  This claim is deeply misleading for two reasons.  First, as this Court noted, the "defendants [did] not dispute" that the putative class was "similarly situated."  Moreover, the plaintiff proffered a letter expressly acknowledging the defendant's "inadvertent payroll error." *Id*. at *14.  Hence, *Funk* is not similar to this case where Nelson Tree disputes that the putative class is similarly situated and where Plaintiff has no evidence of a companywide, FLSA-violating policy.

Plaintiff next cites *Seger v. BRG Realty, LLC*, 2011 U.S. Dist. LEXIS 56117 (S.D. Ohio May 24, 2011) and *Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033 (S.D. Ohio 2018), for the proposition that both courts granted conditional certification based on "two and three declarations, respectively." (Doc. 12, PgID 67).  In *Seger*, the plaintiffs presented evidence of the unlawful policy that applied to all putative class members, and the declarations of the three named plaintiffs supplied the details necessary to establish that the policy harmed the putative class. *Seger*, 2011 U.S. Dist. LEXIS 56117 at *6.  And in *Brittmon*, the "defendants declined to respond to Plaintiff's motion," having misread the rule on when their response was due. *Brittmon*, 285 F.Supp.3d at 1043.  As a result, the plaintiff's motion for conditional certification in *Brittmon* was unopposed. *Id*.  Thus, the four cases cited by Plaintiff lend no support for his argument that three, one-page declarations lacking evidence of an illegal companywide policy can support certification of a collective action involving more than 4,100 individuals.

## V.  <u>CONCLUSION</u>

Circling back to the four conditional certification factors set forth by this Court in *Brandenburg* and *Atkinson*, Plaintiff failed to identify any potential plaintiffs, other than his brother, Bretz, and one other timely opt-in Plaintiff who did not submit a declaration in support of Plaintiff's motion.  The only declarations proffered by Plaintiff, other than his own, were those of his brother and Bretz.  None of those declarations provided evidence of a companywide violation.  And, for the reasons set forth above, a manageable collective does not exist because liability determinations will necessitate a multitude of individualized inquires.

What's more, as demonstrated by the declarations offered by Nelson Tree when compared to those proffered by Plaintiff, the putative collective is not similarly situated. Dissimilar from Plaintiff's allegations, members of the collective do not travel to and from work locations during regular working hours.  Dissimilar from Plaintiff's allegations, members of the collective are paid for travel time.  Accordingly, Plaintiff's motion for conditional certification must be denied.

Respectfully submitted,

/s/ *Timothy S. Anderson*
Timothy S. Anderson (0071593)
Amy Ryder Wentz (0081517)
Alex R. Frondorf (0087071)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114
(216) 696-7600
(216) 696-2038 (Fax)
tanderson@littler.com
awentz@littler.com
afrondorf@littler.com

Attorneys for Defendant,
NELSON TREE SERVICE, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2019, a copy of the foregoing *Brief in Opposition to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Timothy S. Anderson*
Timothy S. Anderson (0071593)

One of the Attorneys for Defendant,
NELSON TREE SERVICE, LLC

FIRMWIDE:162189167.3 100715.1002