IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH NEVILLE,
*On behalf of himself and all others similarly situated,*
    Plaintiff,

v.

NELSON TREE SERVICE, LLC,
    Defendant.

:
:
:
:
:
:

Case No. 3:18-cv-368

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION TO CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION AND TO AUTHORIZE NOTICE OF PLAINTIFF JOSEPH NEVILLE, ON BEHALF OF HIMSELF AND THOSE SIMILARLY SITUATED (DOC.#12); WITHIN 14 DAYS FROM DATE OF FILING OF THIS DECISION AND ENTRY DEFENDANT TO PROVIDE PLAINTIFF INFORMATION AND A LIST AS SET FORTH HEREIN OF PUTATIVE CLASS MEMBERS; WITHIN 21 DAYS OF DATE OF FILING OF THIS DECISION AND ENTRY COUNSEL TO SUBMIT DETAILED PROPOSED NOTICE OF COLLECTIVE ACTION FOR JUDICIAL APPROVAL WITH PROCEDURES AND CONSENT FORM AS SET FORTH HEREIN

---

Plaintiff, Joseph Neville ("Neville"), on behalf of himself and others similarly situated, filed suit against his former employer, Nelson Tree Service, LLC ("Nelson Tree" or "Defendant"). The suit alleges certain violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* due to Defendant's failure to pay their employees for time spent traveling to jobsites in which an overnight

stay was required when such travel resulted in overtime. Doc. #1, PAGEID#1. Plaintiff has filed, pursuant to 29 U.S.C. § 216(b), a Motion for Conditional Certification and Court-Authorized Notice ("Motion"). Doc. #12. Nelson Tree has filed a Brief in Opposition and an Evidentiary Appendix, consisting of 45 declarations of current employees of Nelson Tree,[1] Doc. #15, and Neville has filed a Reply. Doc. #18.

The proposed FLSA Collective Class ("Collective") of Neville is as follows: "All of Defendant's current or former hourly employees who have not been paid for time spent traveling to jobsites in which an overnight stay was required when such travel resulted in a workweek in excess of 40 hours at any time during the three-year preceding the filing of the Complaint to the present." Doc. #12, PAGEID#61.

For the reasons set forth below, the Motion is sustained in part and overruled in part.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Nelson Tree provides distribution and transmission line clearance and related services to utility companies, as well as to other public and private entities,

---

[1] Also included in the Evidentiary Appendix are the following four declarations: Jeffrey Jones, President of Nelson Tree; Plaintiff, Joseph Neville; and former employees of Nelson Tree, Terry Bretz and Eric J. Neville. Doc. 16-1, PAGEID#118; Doc. #16-47, PAGEID#234; Doc. #16-48, PAGEID#235 and Doc. #16-49, PAGEID#236. The declarations of Neville, Terry Bretz and Eric J. Neville are also attached to Neville's Motion. Doc. #12-1, PAGEID##71, 72 and 73.

2

in both urban and rural areas. Doc. #16-1, PAGEID#118. These services are provided by Defendant's hourly non-exempt employees who work in 21 different states and operate in seven different regions. *Id.* The employees of Nelson Tree include three different classifications of tree trimmers, equipment operators and foremen. *Id.* Many employees are union members with the terms and conditions of employment governed by 17 different collective bargaining agreements some of which address travel time and some of which do not. *Id.*

Nelson Tree avers that their employees work on three types of jobs: local jobs, storm work jobs and remote jobs. *Id.* PAGEID#119. Because local jobs do not require an overnight stay and because Nelson Tree has averred that it always pays its employees who do storm work jobs for their travel time regardless of whether an overnight stay is required, Neville's Motion does not include claims for current or former employees of Nelson Tree who have worked either of these two types of jobs. Doc. #18, PAGEID##242 and 243; Doc. #15, PAGEID#92. Neville contends, however, that current or former Nelson Tree employees who have worked remote jobs are included in the putative class, if the remote job included an overnight stay and travel time to and from the jobsite that cuts across the employee's workday and resulted in a workweek in excess of 40 hours. Doc. #18, PAGEID##242 and 243. Neville contends that the failure of Defendant to pay overtime to these employees who worked remote jobs violates 29 C.F.R. § 785.39.

According to the allegations in the Complaint, Nelson Tree employed Neville and "similarly situated individuals as non-exempt laborers" to perform

3

line clearance work and paid them on an hourly basis. *Id.* Neville and the other non-exempt laborers typically worked at least forty (40) hours per workweek, in multiple-day shifts, away from their home communities. *Id.* As a result of the location of the worksites, Neville and these other non-exempt laborers "typically stayed overnight in hotels during the scheduled work shifts" and "spent most of the day before and after their shifts driving hundreds of miles to and from the jobsites. *Id.*, PAGEID#4. "This travel cut across laborers' normal working hours during both regular working days and nonworking days." *Id.* The Complaint further alleges that Nelson Tree "did not count time spent traveling as hours worked for purposes of determining overtime eligibility." *Id.*

In his declaration attached to the Motion, Neville has averred that as an hourly laborer at Nelson Tree from January 2018 to September 2018, his "normal work hours were typically from 6:30 a.m. to 6:00 p.m." and he "frequently" worked more than 40 hours per workweek. Doc. #12-1, PAGEID#71. As an hourly employee, Neville was also "frequently required" to travel to jobs for Nelson Tree that were away from his home and to stay overnight in a hotel. *Id.* Neville stated that he would travel from his home to the out-of-town jobs "many times on Sunday" during his regular work hours, and that "[M]ost times, I would travel back from these out-of-town jobs to my home during my normal work hours on Friday." *Id.* Neville stated that he was not paid by Nelson Tree for traveling to and from his home community to the jobs that required him to stay overnight and that Defendant did not count his travel time as hours worked. *Id.* Neville's declaration

4

also averred that his co-workers similarly traveled to and from their home communities for these out-of-town jobs and would also stay overnight in hotels. *Id.*

Neville seeks conditional certification of a class consisting of the following:

> All of Defendant's current or former hourly employees who have not been paid for time spent traveling to jobsites in which an overnight stay was required when such travel resulted in a workweek in excess of 40 hours at any time during the three-year preceding the filing of the Complaint [November 8, 2015] to the present.

Doc. #12, PAGEID#61.

Also attached to the Motion are declarations of two other former employees of Nelson Tree, Terry Bretz ("Bretz") and Eric Jason Neville ("Eric Neville"). Doc.#12-1, PAGEID##72 and 73. Other than stating that their dates of employment and normal work hours were different than Neville's, the declarations of Bretz and Eric Neville are essentially the same as Neville's declaration. Specifically, Bretz and Eric Neville aver that they "frequently" worked more than 40 hours a week, traveled to jobs away from their homes and stayed overnight in a hotel. Bretz stated that "sometimes" he would "travel from his home to these out-of-town jobs on Sundays during [his] normal work hours" and "most times" he would "travel back to [his] home at the end of the workweek during [his] normal work hours." Doc. #12-1, PAGEID#72. Eric Neville averred that "most times" he would travel from his home "to these out-of-town jobs on Sunday during [his] normal work hours" and "most times" he would "travel back from these out-of-town jobs to [his] home at the end of the workweek during [his] normal work hours." Doc.

5

#12-1, PAGEID#73. Both Bretz and Eric Neville also stated in their respective declarations that their co-workers traveled to and from their home communities and the out-of-town jobs during normal work hours. *Id.*, PAGEID##72 and 73.

With respect to the remote jobs, Nelson Tree admits that it does not pay travel time for these jobs. "It is our expectation and understanding that these individuals travel to these remote work locations on Monday mornings prior to the start of their first shift of the week and return home the night of their last shift of the week." Doc. #16-1, PAGEID#119. Moreover, Nelson Tree, also admits that it does not keep records of the employees who traveled for an overnight stay or when they did so for remote jobs.

> Nelson Tree does not maintain records showing which employees traveled for an overnight stay or when they traveled to remote work locations, but it does keep records of per diem payments to employees, which normally correlate with an overnight stay during the workweek. Nelson Tree, however, does not separately track payments for travel time, as opposed to regular working hours. For instance, when an employee performs storm work, they are paid for their travel to and from the remote work location, but that time is recorded as regular working hours, indistinguishable from travel time.

*Id.*,PAGEID#119.

Since November 8, 2015, the date that Neville filed this lawsuit, "Nelson Tree employed 4,146 non-exempt employees who received a per diem, signifying an overnight stay in connection with their work..." Doc. #16-1, PAGEID#118.

In addition to alleging a violation of the FLSA for failing to pay overtime to Nelson Tree employees who worked in excess of 40 hours per week and traveled to remote jobs during their normal worktime, the Complaint also alleges that this

6

failure to pay was willful. Finally, Neville alleges that Nelson Tree violated § 516 by failing to make, keep and preserve sufficient records to determine the wages, hours and other conditions and practices of employment.

As required by §216(b), Neville, Bretz and Eric Neville have filed notices of consent to join in this collective action. The consents to join were filed on November 8, 2018, January 8, 2019 and January 25, 2019, respectively. Doc.##1,8 and 10.

## II. LEGAL STANDARD

The FLSA requires covered employers to pay non-exempt employees not less than the applicable minimum wage for each hour worked, and one and one-half times the employee's regular rate of pay for each hour worked in excess of forty hours per week. 29 U.S.C. §§ 206-207. Employers who violate these provisions are liable for the unpaid wages, plus an additional amount as liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). Under the FLSA, a collective action may be filed by one or more employees on behalf of themselves and other "similarly situated" employees. *Id.* However, unlike a typical class action lawsuit, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The certification process in an FLSA collective action typically proceeds in two phases. Because the statute of limitations for an FLSA claim continues to run

until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.) (mortgage loan officers entitled to conditional nationwide class certification before defense on the merits is ripe since time is of the essence due to statute of limitations not tolling for plaintiffs who have failed to opt-in).

Before authorizing the plaintiffs to send the notice, however, the Court must first determine whether they have shown "that the employees to be notified are, in fact 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Because this determination is generally made before discovery is conducted, plaintiffs need make only a "modest showing" at this initial stage of the litigation. *Lewis*, 789 F. Supp.2d at 867. While "similarly situated" is not defined in the FLSA, employees are generally considered to be similarly situated if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Id.* at 868. "Plaintiffs can show they are similarly situated by showing that 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, --- U.S. ----, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016)). The "'similarly situated' requirement is less

stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b)[,] . . . [and] is considerably less stringent than the requirement of Rule 23(b)(3) that common questions 'predominate[.]'" *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Application of this "fairly lenient standard . . . typically results in conditional certification." *Comer*, 454 F.3d at 547. At no point in resolving the conditional certification issue, however, does the Court opine on, or even consider, the merits of plaintiffs' claims. *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *7 (S.D. Ohio Dec. 9, 2011) (Rice, J) (citing *Creely v. HCR Manorcare, Inc.*, 789 F.Supp.2d 819 (N.D. Ohio 2011)). Factors to be considered in a motion for conditional class certification include: "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis*, 789 F. Supp. 2d at 868 (quotations and citations omitted).

### III. NEVILLE HAS MET HIS BURDEN FOR CONDITIONAL CERTIFICATION SUBJECT TO MODIFICATIONS FOR NON-EXEMPT EMPLOYEES AND ANY APPLICABLE COLLECTIVE BARGAINING AGREEMENTS

Based on the three declarations filed by Neville, as well as the declaration of Neville's President, Jeffery Jones, Neville argues that Defendant has a companywide policy of not paying their employees for time spent traveling to

remote jobs that require an overnight stay.[2] Neville requests the Court conditionally certify the following Collective: "All of Defendant's current or former hourly employees who have not been paid for time spent traveling to jobsites in which an overnight stay was required when such travel resulted in a workweek in excess of 40 hours at any time during the three-year preceding the filing of the Complaint to the present." Doc.#12, PAGEID#61 (citing 29 U.S.C. § 216(b)). Neville claims that the regulations of the Department of Labor require that Nelson Tree compensate their employees for time spent traveling away from their home communities.

> **Travel away from home community**.
> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days.

29 C.F.R. § 785.39

Nelson Tree argues that the declarations of Neville, Bretz and Eric Neville fail to establish a "common FLSA-violating policy" throughout Nelson Tree, that the claims require individualized determinations that render a collective class unmanageable and that Neville lacks evidence that he is similarly situated. Doc.

---

[2] It is conceded that Nelson Tree pays for all travel time for storm work jobs. Doc. # 16-1, PAGEID#119; Doc.#18, PAGEID#243.

10

#15, PAGEID##11-14,17-22 and 23-25. The Court will address each of these arguments.

### A. Common FLSA-Violating Policy

Nelson Tree argues that the declarations submitted by Neville do not include certain critical information. Doc. #15, PAGEIE#101. For example, Defendant contends that the declarations should provide, among other things, the names of the affected co-workers, their supervisors, the state or region the co-workers worked in, and their normal working hours. Defendant also argues that statements in the declarations such as "frequently," "sometimes," "most times" and "many times" fail to establish any FSLA violation. Although the issues raised by Nelson Tree are relevant, as well as "'whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists,'" *Lewis*, 789 F. Supp 2d at 868 (citations omitted), the Court finds that a sufficient factual basis of an FSLA violation has been provided by Neville.

Evidence exists from the declarations of Neville, Bretz, and Eric Neville that travel time to job sites for remote jobs was not included in any overtime calculation even though the travel cut across the normal work hours. Although the declarations submitted by Neville do not provide specifics as to when the alleged FSLA violations occurred, he is not required, at this early stage, to show that the travel time for the remote jobs that necessitated an overnight always cut across normal work hours. "Plaintiff is not required to show that he and other

11

security officers worked through <u>every</u> lunch in order to prove an FLSA violation or to support conditional certification." *Hamm v. Southern Ohio Medical Center*, 275 F. Supp. 3d 863, 870 (emphasis in original), citing *Gessele v. Jack in the Box, Inc.*, No. 3:10–cv–960, 2013 WL 1326563 at *24, (D. Ore. Jan 28, 2013) (conditional certification permitted notwithstanding statements of employees that they "occasionally," "sometimes" and "a whole lot of times" were forced to return early from lunch).

Moreover, the declaration from Jeffery Jones, president of Nelson Tree supports that travel time was not included for remote jobs since it was Defendant's "expectation and understanding that these individuals travel to these remote work locations on Monday mornings prior to the start of their first shift of the week and return home the night of their last shift of the week." Doc. #16-1, PAGEID#119. This "expectation and understanding," of Nelson Tree, however, appears to be at odds with what was occurring in practice as demonstrated by the declarations filed by Neville. Finally, although Nelson Tree has provided 45 declarations from across their company, many of these declarations involve the payment of travel time for storm work jobs, which is not at issue, and also involved local jobs, for which no overnight stays were required and where any travel time is not an issue in this matter. Because "[T]he named plaintiff 'need only show that his position is similar, not identical, to the positions held by the putative class members,'" *Hawkins v. Extended Life HomeCare Ltd.*, No. 2:18-cv-344, 2019 WL 952737 (S.D. Ohio, E.D. Marbley, J.), citing *Lewis*, 789 F. Supp. 2d

867-68 (S.D. Ohio 2011) (alteration omitted); see also *Comer*, 454 F.3d at 546-547, Neville has produced sufficient evidence supporting his allegation that the putative class was subject to a common policy.

### B. Individualized Determinations and Unmanageable Class

Defendant's next argue that the "putative collective is not similarly situated" and that this is proven by the 45 declarations of Nelson Tree employees who are "individuals falling within the proposed class definition [but] did not experience the alleged FLSA violations asserted by Plaintiff." Doc. #15, PAGEID#102. Lacking any "common evidence upon which liability can be determined, "individualized determinations will be necessary" for each putative class member for each week that they worked" and that as result, the proposed Collective is unmanageable. *Id.* PAGEID##102-103. Nelson Tree contends that the members of this nationwide putative class will need to prove what their regular working hours were, what time of day did the alleged travel occur, how long was the travel and how many hours were worked each week. *Id.* 103-104.

Neville argues, however, that the 45 declarations submitted by Nelson Tree do not fall within his proposed Collective action, since they include employees who are paid for storm work jobs as well as declarations from employees who have worked only local jobs where overnight stay and travel time are never an issue. Doc. #18, PAGEID##244 and 250. Neville submits, based on the declarations he has submitted as well as the declaration of Nelson Tree's president, that the claims of the employees who have worked remote jobs are

13

unified by the common theory of Nelson Tree's alleged failure to pay overtime for travel occurring during an employee's normal working hours. *Swigart v. Fifth Third Bank*, 276 F.R.D. at 213. Moreover, "[If] discovery later shows the claims in this case to be so individualized as to render a collective action unmanageable, the defendant may move to decertify the collective action at the second stage of certification proceedings." *Hamm v. Southern Ohio Medical Center*, 275 F. Supp. 3d at 877. Because the putative class will be limited to only remote jobs where travel cut across the normal work hours and resulted in a work week in excess of 40 hours, the class is manageable.

### C. Similarly Situated

Nelson Tree's final argument, that Neville lacks evidence that he is similarly situated, is based, again, on the 45 declarations filed in Defendant's Evidentiary Appendix, Doc. #16, PAGEID#114. Specifically, Nelson Tree argues that there are collective bargaining agreements that may affect claims for reimbursement of travel time by the Collective that Neville seeks to represent, as well as the fact that many Nelson Tree employees are exempt from overtime since they hold CDLs or drive bucket trucks and are overtime exempt under the Motor Carrier Act, 29 U.S.C § 213(b)(1). While Defendant's argument does not require a denial of Neville's Motion, the concerns raised by Nelson Tree do, in this Court's opinion, require that the proposed class be modified in order to exclude the former and present hourly employees who are exempt from overtime under the Motor Carrier Act, 29 U.S.C § 213(b)(1), as well as the former and present employees who are subject to

a collective bargaining agreement that otherwise addresses reimbursement for travel time. Accordingly, the Collective conditionally certified is as follows:

> All current or former hourly non-exempt employees of Defendant who (1) were required, due to the distance from their home community to a jobsite, to stay overnight; (2) have not been paid for time spent traveling to jobsites; (3) are not subject to a collective bargaining agreement that addresses payment of travel time; and (4) as a result of the travel time to the remote job, worked over 40 hours in any workweek beginning November 8, 2015, and continuing through the date of the final disposition of this case.

In granting this conditional certification, however, the parties are reminded that

> [C]onditional certification is meant only to aid in identifying similarly situated employees. It is not a final determination that the case may proceed as a collective action. After the opt-in forms have been filed and discovery is complete, a defendant may file a motion for decertification. At that point, the court examines with much stricter scrutiny the question of whether these other employees are, in fact, similarly situated.

*Comer*, 454 F.3d at 546–47, as cited in *Lacy*, 2011 WL 6149842 *2

## IV. NOTICE AUTHORIZED UNDER THE FOLLOWING PARAMETERS

Within 14 days of the date of this Decision and Entry, Nelson Tree shall provide to Neville's counsel a list, in electronic and importable format, of the names, job titles, last known addresses, telephone numbers, e-mail addresses, and dates of employment, of the following individuals:

> All current or former hourly non-exempt employees of Defendant who (1) were required, due to the distance from their home community to a jobsite, to stay overnight; (2) have not been paid for time spent traveling to jobsites; (3) are not subject to a collective bargaining agreement that addresses payment of travel time; and (4) as a result of the travel time to the remote job site, worked over 40

hours in any workweek beginning November 8, 2015, and continuing through the date of the final disposition of this case.

Also within 21 days of this Decision and Entry, counsel for Neville and counsel for Nelson Tree shall submit to this Court a detailed proposed Notice of Collective Action for judicial approval, with a consent form, and specifying all methods for communication of the Notice to the putative class.

## V. CONCLUSION

For the foregoing reasons, the Court SUSTAINS in part and OVERRULES in part Neville's Motion to Conditionally Certify an FLSA Collective Action and to Authorize Notice, Doc. #12. The Court orders the following:

1. The following collective is conditionally certified: all current or former hourly non-exempt employees of Defendant who (1) were required, due to the distance from their home community to a jobsite, to stay overnight; (2) have not been paid for time spent traveling to jobsites; (3) are not subject to a collective bargaining agreement that addresses payment of travel time; and (4) as a result of the travel time to the remote job, worked over 40 hours in any workweek beginning November 8, 2015, and continuing through the date of the final disposition of this case;

2. Defendant shall provide to Plaintiff's counsel, within 14 days of the date of this Decision and Entry, a list, in electronic and importable format, of the

16

names, job titles, last known addresses, telephone numbers, e-mail addresses, and dates of employment, of the all putative collective members; and

3. Counsel for Plaintiff and counsel for Defendant shall submit to this Court, within 21 days of this Decision and Entry, a detailed proposed Notice of Collective Action for judicial approval, with a consent form, and specifying all methods for communication of the Notice and consent form to the putative class.

Date: April 18, 2019

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE